This is Dillenwater v. Honeywell. And for the appellant, Mr. Eaton. And for the appellee, we've divided all your time up. Ms. Boehm, Mr. Fisher, Mr. Simpson. You may proceed. Good morning, Your Honors. My name is Tim Eaton, and I represent Charles Dillenwater and Donita Dillenwater, the plaintiffs in this case. Your Honors, the trial court granted the defendant's judgment notwithstanding the verdict after the jury found in favor of the plaintiffs and against Honeywell, Apex, Owens, Illinois, and Crane for a collective judgment of $89,600,000. The trial court found in making its ruling on the JNOV that, quote, all of the evidence viewed in the light most favorable to the plaintiffs overwhelmingly favors the defendants that no contrary verdict can stand. Respectfully, this was error. Our Supreme Court has counseled that a JNOV is inappropriate if reasonable minds might differ regarding the inferences or conclusions to be drawn from the evidence. So the key is whether or not reasonable minds may differ regarding the inferences of the evidence in this case. As to the evidence in this case as to whether there was an agreement to conspire to suppress information regarding the harmful effects of asbestos, both the public and workers who come in contact with it, over 140 jurors of the 11th Judicial Circuit have found there was enough evidence of a conspiracy. Seven justices of this court have also found the evidence to support a jury verdict. This is not just an isolated case where a judge needed to intervene and set aside a verdict. So the question becomes whether or not it was reasonable for this jury, in light of the fact that over 140 other jurors had found reasonable inferences of a conspiracy, and seven justices of this court, whether it was reasonable for them to make the same inferences. And I would submit it was. The evidence of a conspiracy has been argued in this court many times, starting back with the Burgess case. McClure, which went to the Supreme Court, as this court knows. Burgess 2, Dukes 1, Dukes 2, McDermott, Minson, and recently Dunham. And in those cases, there has been no question that the court has found adequate parallel conduct. The issue has been whether or not there's something above and beyond that. And this court has found, in Dukes 1, that there was. In Burgess 1 and 2, that there was. In addition, our Supreme Court in McClure found that there was parallel action based upon the evidence that a jury could have concluded, based on parallel evidence alone, that there was a sufficient amount of evidence to show that these defendants were suppressing the information from the public and their own employees. What McClure said to us was, now we have to find more. And specifically in Dukes 1, this court found more. So the focus has been, since McClure, on what additional conduct or contacts has there been between these alleged co-conspirators. Time and time again, as I've said, jurors have found that based upon the reasonable inferences from these contacts between these companies, in addition to the parallel conduct, that there was sufficient evidence to show an agreement to conspire. And since McClure, there's been even more evidence. As this court, this specific panel, pointed out in Dukes 1, that contrary to what Owens, Illinois, represented to the court in McClure regarding contacts with UNARCO and JM, there actually were a number of contacts with UNARCO and JM in the 40s and 50s. So this court concluded what OI presented to the McClure court was at odds with this fact. And McClure's finding of only isolated contacts between these companies was at odds with the later found evidence. Since McClure, in the various cases that I referenced earlier, we have learned that there were a number of additional contacts with the companies that related to buying and selling of these products, a conspiracy to suppress certain studies, and more evidence, more evidence to establish that each individually knew of the dangers of asbestos long before they warned their employees. In this case, Charlie Gillenwalder's exposure did not begin until 1972, well after these companies knew of the dangers of asbestos and after these companies had conspired to keep Charlie ignorant of this danger. For example, in Menson, there was some discussion about contacts between Johns Manville and Bendix regarding a Manville position paper in 1969. Had Bendix, now Honeywell, had Johns Manville, had the others who were involved in suppressing this information, made this public and had a campaign about warning workers who would come in contact with this, it might have saved Charlie Gillenwalder from that exposure three years later. In each successive case, there seems to be a later date when exposure occurs, starting with Redarmo back in the mid-50s, this court recognized in Menson that it was 12 years later, now we're another three years later, now OSHA's involved. Still, there is a conspiracy of silence, a conspiracy to suppress. As to Honeywell, in this case, we have additional evidence of the numerous purchase orders between Bendix and Unarco of brake lining in unbranded bags. Could you get a little specific on how Honeywell and or ABEX conspired with Owens Corning? Sure, I'd be happy to. With respect to Owens Corning, we know that Owens Corning knew of the dangers of KALO even before it started to manufacture, almost contemporaneous with, based upon their dealings with the Saranac Laboratory. And this was in approximately 1943, and then sold significant portions of it between 1948 and 1958. We know that there were purchases made between Owens Corning and Johns Vanville. We know that in 1999, that Owens, Illinois, filed a lawsuit with respect to what they alleged to be a cartel among asbestos manufacturers. And in paragraph 39, this was not just about price fixing, Your Honor. In paragraph 39, they alleged that this cartel was trying to suppress health risks posed by exposure to asbestos. And one of the conspirators was Johns Vanville, suggesting that there had been contact by Johns Vanville with Owens, Illinois, and Owens, Illinois was claiming they were misled, even though Owens, Illinois knew full well of the problems with asbestos before they started manufacturing it in 1943 and between that period of 1948 and 1958. And they continued to use asbestos-containing products after 1958 in their plants making glass. That's not when their activities with respect to asbestos stopped. They continued to use it, and still do not want it. You referred to Owens, Illinois, but I asked about Owens Corning. Oh, well, Owens, Illinois is the defendant in this case, which is why I explained that. In terms of Owens Corning, we have Owens Corning and asbestos being sold by- And the reason, Kels, I'm asking is Owens Corning actually supplied the asbestos, correct? In this particular case- In this particular case. In this particular case, the exposure was as to John Crane asbestos, and John Crane was not named as a co-conspirator in this case. John Crane was named as the party who manufactured the asbestos that Gilwater came in contact with, and there was a verdict against John Crane. But John Crane was not listed as a co-conspirator. Was there anything further, Your Honor? No, continue on, please. Thank you. With respect to this case, we have additional evidence with respect to Bendix that there were numerous purchase orders between Bendix and Unarco of brake linings in unbranded bags so they could be sold as Bendix product, even though they were Unarco. We have reams of purchase orders in this case between Bendix and Ray's Asbestos. In addition, we have in prior cases the contact between John Mansville and Bendix with respect to the position paper, as well as the directors that have served on both Bendix's board, Apex's board, and John Mansville. And, Your Honors, I would submit the flaw, I think, in some of the logic that the defendants are putting forward is that they take each one of these factors and they pick it up by pointing to a case where it says just being in a trade organization isn't enough, or they say having overlapping directorships is not enough. But what this jury did properly was to consider all of these factors, all of this evidence, all of the parallel conduct, and they reached the conclusion that when you consider all of the inferences, there was sufficient evidence to prove, circumstantially, by clear and convincing evidence, that there was a conspiracy. And we believe they got it right when you look at all of the evidence. I know this court in Redarmel was focusing specifically on the Saranac Laboratory Court. And I believe this court said in Redarmel that they may have been doing it to save their own skin, but they may have done the right thing for the wrong reasons. And I would respectfully submit that this jury, after hearing all of the evidence, reached a different conclusion, that they not only looked at the wrong reasons, they decided that what they did was not the right thing when you consider the contacts that the parties continued to have after that time. So we are asking this court to consider the totality of the circumstances because that's what this jury considered. And that's why all these jurors in the Eleventh Circuit have come up with the same conclusion based upon evidence. And as a matter of fact, the evidence has gotten stronger in each case with more contacts. Now, many of these contacts, you might argue, deal with just additional parallel conduct, where they're trying to suppress within their own company information regarding the dangers and asbestos to their employees and consumers. But again, what I would submit is if you take all of those instances where they were concerned internally, whether they do dust studies, whether it be at ABACs or whether it be at Bendix, the more they became aware of this fact, isn't it hard to believe that the more they didn't talk about it with their suppliers or their purchasers of their product or at these meetings or when they were talking about these studies, it defies logic. If it's this important to them that they do study after study after study internally, they know of the harm, they have these contacts, how can a jury conclude that what they discussed at those contacts were innocent? They concluded the opposite. And I'm well aware of what the McClure Court has told us at the Supreme Court, that where there's circumstances that there could be either an innocent construction or a guilty construction, when you deal with a conspiracy, you look at the innocent. But Your Honor, I believe you addressed that when you said in Redarmo that their activities may have been to save their own skin and they had the wrong reasons for just almost accidentally doing the right thing if you believe that there wasn't enough scientific evidence to publish that study. Why couldn't a jury look at that same issue in light of all these factors and all these contacts and have reached a reasonable inference that based on this evidence, which indeed is circumstantial, it was a conspiracy? I think courts have struggled, not only this district but elsewhere, with this notion of clear and convincing circumstantial evidence. It almost seems like an oxymoron when you're dealing with circumstantial evidence and you have to say it has to be clear and convincing. But our court has said that, and we have met that test. Because in cases where circumstantial evidence is involved, you have to look at all of it. Because there's nothing direct. And particularly in a conspiracy, this court has acknowledged in many of its decisions, as well as the Supreme Court and the clerk, that in conspiracies it's hard to find direct evidence. So you look at circumstantial evidence and you look at inferences based upon that evidence, which is what these jurors have done time and time again. So again, I would submit that Redarmo and Minson are not necessarily precedent that would bind this panel from reaching a different conclusion based on, again, the date of exposure, 1972, based again on the additional context that we presented in this trial that was not present in Redarmo and Minson. And I would ask this court to reconsider, even if you don't find that there's more evidence, its decisions in Redarmo and Minson. Because I believe in the totality of the circumstances, there is enough for this jury to have found this verdict. And let me address one other issue. There was a loss of consortium claim, which Danita Gilmander had filed, and it was a summary judgment. Defendants are citing to the case of Monroe v. Trinity Hospital, which in that case, the plaintiffs married after there had been a known injury based on an accident, and they held the loss of consortium was not proper because you can't marry into the injury. Here we're dealing with a case where there was exposure as early as 1972. They married in 1987, and he didn't come down with this disease until 2009, almost 22 years later. This is not the same circumstances. Cases that have addressed this issue in other jurisdictions have found that a loss of consortium claim under these circumstances is entirely proper. So we would ask the court to visit that issue and give Mrs. Gilmander her day in court as well on the loss of consortium. Finally, and I know I will be saving some time for rebuttal, we would again ask this court to reconsider some of its recent decisions in light of the different facts and circumstances in this case, and in light of the overall principle here that reasonable jurors could find sufficient evidence as they have. Is there anything currently pending in front of the Supreme Court that might address some of these issues that you're bringing to this court's attention today? Justice Turner, not that I'm aware, and one option this court would have, because it has been a while since McClure has decided, is that if you feel that there really is a dispute as to whether enough evidence has been presented as to this conspiracy, it would be to certify this opinion to the Supreme Court under 316 and let them deal with it again. That's one option. But not that I'm aware of in terms of anything that's pending before the court. I wasn't aware of any either. I just thought I'd ask you to do that. Thank you. All right, Mr. Simpson. May it please the court, Reagan Simpson from New Mill Apex, referred to as Apex. The jury found a conspiracy existed even though manufacturers had been using caution labels on asbestos-containing products for a number of years, even though OSHA had begun regulating asbestos in 1971 and issued an emergency temporary standard at the petition of the AFL-CIO, and even though Apex was negotiating with its union over protections for workers concerning asbestos and the Union Bulletin Board had information about asbestos posted on it. Under those circumstances, a conspiracy cannot exist, and that is a reason, and this case stands as a reason for the clear and convincing evidence standard to protect from jury verdicts based on suspicion and speculation. In McClure, the court very carefully analyzed the clear and convincing evidence standard, pages 140 and 141 of its opinion, and stated that there are two allied and corollary principles that grow out of that standard. One is the construction rule, and second, the requirement of more than just parallel conduct. The court applied those principles in this very litigation, and this court applied those principles correctly both in Rodarmo and in Minson decisions. The result in those decisions should obtain here, and that is because the evidence is the same. There are only minor variations in the evidence concerning the same categories of evidence that this court has held to be legally insufficient evidence of conspiracy. We have an additional advertisement. We have a few more industrial hygiene surveys. We have sales documents between Apex and Honeywell, normal business activities. Those are exactly the types of categories of evidence this court has held is legally insufficient evidence of conspiracy. So the same result should apply in this case. Contrary to the arguments that I see in the appellant's brief, the innocent construction rule is not limited to cases involving public officials. In Tribune Company v. Thompson, the court very clearly discussed the innocent construction rule and cited four cases, none of which had to do with public officials, and then went on to add that in that case you had the presumption that public officials act in good faith. But they were not certainly circumscribing the innocent construction rule to that principle. Nor is the innocent construction rule limited to situations in which you're dealing with antitrust principles and desirable economic conduct. That seems to be argued, but there's no support for that in the case law. Instead, the innocent construction rule applies whenever there are non-conspiratorial reasons for the conduct. And to reply to my colleague on the other side, that's exactly what Rhode Island was talking about when actions are taken in self-interest. That is contrary to conspiratorial conduct. That's an action in self-interest. It doesn't show conspiracy and it doesn't prove conspiracy. So whenever there are non-conspiratorial reasons for conduct, then the innocent construction rule applies. In fact, looking at the evidence... I think he was arguing that the jury could have found that they did the right thing for the wrong reasons. As compared to this court making that determination. That's what I got from this argument. How do you respond to that? Well, again, the standard is clear in convincing evidence. And the standard is designed to protect from jury verdicts based on suspicion and speculation. And applying that standard, one of the principles that comes out of that standard is the innocent construction rule. So if you have conduct that is equally susceptible of a non-conspiratorial reason, even if it's self-interest, then that is not clear in convincing evidence of conspiracy. And jury verdict that's based on that cannot stand. As to ABEX, ABEX didn't object to the publication of the tumor data. That's in Plaintiff's Exhibit 360B. Dr. Hamlin said it's already in the published literature. Similar reports frequent in this country and abroad. When ABEX received information in Plaintiff's 361 that the tumor data was flawed and unreliable, it didn't insist upon the publication of that data. And there's nothing conspiratorial about not insisting upon data that is not reliable. Especially when it's already a subject of medical literature. And especially when ABEX, in 1948, had never had a single case of asbestosis in any of its facilities. So, simply put, as the court held in Rhode Armour, there is nothing tortious or nothing conspiratorial about the conduct of ABEX in this case. And the jury verdict, to the contrary, should not stand under the applicable clear and convincing evidence standard as declared by the Supreme Court in McClure and as applied by this court in cases involving the same evidence. Unless the court has other questions, I'll complete my argument. I don't see any. Thank you. Thank you. Ms. Bain? May it please the court. Good afternoon. Again, I'm Colleen Bain. I'm here on behalf of Honeywell International, Inc. in this matter. And as you heard from previous counsel this afternoon, and as you all are well aware yourselves, the conspiracy allegations that were presented in the court below and that are before you now have a long history both with this court generally and certainly involving Honeywell specifically. And given that history and this court's opinions in Rhode Armour and Menson and other orders from this court, which Honeywell's position would respectfully be that they should be followed and that they are, as to Honeywell's finding on this panel, I will only take a few moments of your time. I, of course, am prepared to answer any questions that you might have. But barring that, I would like to just focus briefly on the question of the sufficiency of the evidence. And as your honors are well aware, in both Rhode Armour and Menson, following the precepts of the McClure opinion, it has been found by this court and a majority of the jurists on this court that the level of evidence against Honeywell and the conspiracy actions you've heard to date has been insufficient as a matter of law and that as a result, judgment for Honeywell has been appropriate. So what I'd like to do just very briefly is touch upon the very few items of additional evidence that were before the court below and that are before you now in this matter to, again, emphasize that the level of evidence against Honeywell is insufficient to meet plaintiff's burden and to prove by clear and convincing evidence, which is required given the circumstantial nature of the evidence, that Honeywell did, in fact, enter into a conspiracy, as alleged. The additional evidence as put forth in the briefs before your honors is very limited. I will echo Avex Counsel's words when he indicated that it's overwhelmingly the same evidence that has been before the court with only minor variations. And even within those variations, the evidence falls within the exact same categories of evidence that this court has already rejected. First, with regard to purchase orders, Appellate's Counsel and Avex Counsel both talked about purchase orders, normal business relationships, normal business activity back and forth. As the court found in Redormal, even an exclusive supplier relationship is insufficient evidence to find an inference or to support an inference of conspiracy. And certainly any new evidence currently before this panel of a relationship, a purchaser-supplier business relationship between Honeywell and any other company alleged by plaintiff to be involved in the conspiracy cannot support an inference by clear and convincing evidence that Honeywell agreed to suppress the harmful effects of asbestos. Other types of evidence would include independent post-OSHA conduct. And again, echoing Mr. Simpson for Avex, the dates of exposure are very important in this case. Contrary to opposing counsel's position that the importance of that is that it's later in time and therefore maybe you can set aside Minson and Redormal, which again I respectfully disagree with, the import there is how much information is out in front of everybody at that point in time by the time Mr. Gillenwater is first exposed. Mr. Simpson went through those matters for you and I won't expound on those further other than to say the post-OSHA or certainly the post-emergency standard activity undertaken by Honeywell and its predecessor Bendix that was independent cannot support an inference of conspiracy. Finally, there was a snippet of some prior testimony that hadn't been presented to the jury before from Honeywell's CEO regarding the fact that he would agree as a lay witness that normally you are not going to put down a conspiracy in writing. Respectfully, how any sort of lay opinion that does nothing more than actually repeat and reaffirm what the law has already found, which is that you are seldom to find direct evidence of conspiracy, how just a lay opinion on that fact supports a finding or an inference of conspiracy is completely without merit. And for those reasons, we do request that this panel affirm the court below and stand by the judgment, notwithstanding the verdict for Honeywell in this matter. And if there are no questions, I will conclude. I don't see any. Thank you. Thank you, Your Honors. Mr. Fisher. May it please the Court. My name is Matthew Fisher and I'm here for Owens, Illinois. Good afternoon. There is no relationship between Mr. Gillenwater and Owens, Illinois, other than this lawsuit. There's no nexus between Owens, Illinois' behavior and Mr. Gillenwater's mesothelioma. Mr. Gillenwater began his working life in 1972, 14 years after Owens, Illinois sold its last piece of Kalo, which was indeed an asbestos-containing insulation product used for industrial purposes. There is no evidence of Owens, Illinois being involved in the agreement that is alleged in this case. There's no evidence of Owens, Illinois entering into an agreement or ratifying a prior existing agreement. An agreement has to be voluntary and intentional. There's no evidence of who, on behalf of Owens, Illinois, agreed, or with whom they agreed, or when they agreed, or how they agreed, or to what they agreed. There's nothing about the scope of the agreement or the duration of the agreement. There's no evidence of any exchange of assurances of common action. There's no evidence of a common plan being put into place. There's no evidence of enforcement of a common plan. At best, the plaintiffs have presented evidence of separate conduct that is not connected by an agreement. And we know from McClure and the other decisions of this court, that that simply is not enough to support a verdict of conspiracy under the applicable standards. McClure makes it clear that that's not enough. McClure gives us both the process and the substantive answer to the question of whether or not the evidence here is sufficient. McClure used a two-step process. One, is there parallel conduct? Two, is there more than parallel conduct that would support a reasonable inference of agreement under the circumstances? That's the two-step process that was employed by this court in Ridarmal and in Menson. It is also the two-step process that was applied by Judge Drzefski when the J&OB motions were decided and judgment was granted for the defendants. Much of the proof offered by plaintiffs in the Gillenwater case was addressed in McClure. Some new exhibits were presented, but they aren't new evidence. It is more evidence of parallel conduct. Counsel points out that Owens, Illinois used asbestos-containing products in its glass plants after 1958. That's true. Lots of businesses used asbestos-containing products all the way up through the 1970s. It is not any evidence of agreement. It's not any evidence of a common plan. It's not anything other than parallel conduct. It was not in the McClure record that Owens, Illinois purchased fiber from Johns Manville and perhaps also Unarco. That evidence is in the Gillenwater record. Ridarmal and Menson, as well as McClure by reasoning, demonstrate that purchasing asbestos fiber isn't evidence of a conspiracy to suppress or misrepresent information about asbestos. Indeed, as this Court has said, it is subsumed within the notion of parallel conduct. The other evidence that Plaintiff offered here that was not offered in McClure is simply of the same type that we have seen before. And indeed, there will always be a slightly different exhibit, a slightly different piece of evidence, that would demonstrate parallel conduct in a slightly different way than was demonstrated in McClure. That is not, as counsel suggests, a reason to say, well, the parallel conduct evidence is stronger, so therefore the jury's verdict should be sustained. Instead, it is a demonstration that the legal rule that has been applied in these cases and that is necessary in order to make sure the conspiracy liability isn't expanded beyond its rational limits, is very important. That legal rule that says parallel conduct by itself is not enough is important as a judicially imposed rule to prevent repeated trials that demonstrate parallel conduct in slightly different ways. Justice Turner, you had asked about the source of the exposure. Another problem here is that there is not a link that can be drawn between the conspiratorial conduct and the alleged exposure in the case. Mr. Gillenwater's career started in 1972. Not only, as was mentioned earlier, did some asbestos-containing products available in that marketplace contain caution labels, and remember this is Owens, Illinois last sold cable in 1958, but asbestos-free products came onto the market during Mr. Gillenwater's working career. So the evidence about the co-workers remembering, whether it be Owens Corning products or Johns Manville products, didn't have a sufficient foundation that those products indeed contained asbestos. As a result, DACR, frequency, regularity, and proximity, couldn't be satisfied as to the purported tort feasors, and therefore we couldn't have conspiracy liability vicariously. So that is another issue in this case that would cause judgment to be appropriate for Owens, Illinois. I would also ask that the court consider the independent duty rule. That is a rule that was adopted by the First District in the Doe v. No case. It was argued to this court by Owens, Illinois in McClure. This court rejected the independent duty rule in Doe v. No, saying that the relationship there was different than a relationship involving manufacturers of asbestos products. The independent duty rule has been adopted in other states. We cited the California case and the Texas case in our briefs. It is another judicially opposed rule that has been used to prevent the inappropriate and irrational expansion of conspiracy liability beyond its rational basis. In a situation like this, where we know, in Illinois, manufacturers are not responsible to warn of risks posed by products sold by other companies, it is appropriate to have that kind of judicial rule to prevent the imposition of a duty on companies like Owens, Illinois to warn of dangers posed by other companies' products, which, of course, it wouldn't have any basis to do. This case is a good example. Mr. Gill in the water. His first possible exposure is a decade and a half after Owens, Illinois was out of the business. How could Owens, Illinois have warned him? That is essentially, through the conspiracy theory, an imposition of a duty on Owens, Illinois that can't be discharged. So we would ask that the judgment be affirmed. I'm, of course, happy to answer questions, but otherwise, I don't know. I don't appear to be any. Thank you. Thank you. In Dukes 1, this panel said, Defendant Honeywell does not contest that the conspiracy did not exist between many of them. It only contends no such evidence exists for finding Owens, Illinois or Owens Corning were parties to that agreement. So Honeywell says in that case, there is this conspiracy, it just doesn't involve these two parties. One of the counsel argued that this court, this panel, is bound by prior opinions and orders of this court. First of all, I respectfully disagree with that. It certainly is not bound by prior orders, which are non-precedential. It certainly is not bound by prior opinions, because we don't have an en banc system where one opinion speaks for the entire court. And when you do the head count, taking Rule 23 orders out of it, less than the majority of this court has ruled in favor of Honeywell and ABEX. Again, eliminating Rule 23 opinions. So the majority has not responded on that in an opinion that has precedent. Counsel also argued that because his exposure was in 1972, that therefore he should have known. There was no evidence. The standard is he knew or should have known. It's did he know. The jury found he didn't. This was raised below. The jury found that in 1972 it would have been reasonable to infer that these warnings were not given to him because of this conspiracy. So there's just no merit to that contention. And finally, again, as counsel did today, each are picking apart parts of this circumstantial evidence and say it doesn't amount to a conspiracy. You take that part out, you take that part out. There's not enough. This jury was instructed to look at all of the evidence, all of the circumstances, and it reached the right conclusion that there was sufficient evidence under the clear and convincing circumstantial evidence rule to find against these defendants. And they made their opinion very clear with $20 million against Honeywell, $20 million against Apex, $40 million against Owens-Illinois, and $9.6 million in compensatory damages, which included Crane. I would ask this court to also make it very clear that this conduct is unacceptable and to revisit those opinions if you feel it's necessary. Otherwise, look at the dates here, look at the additional evidence, and find in favor of these plaintiffs. Thank you. Thank you, counsel. We'll take this matter under advisement and stand in recess until tomorrow morning.